United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,<br><br>Defendants. | Case No. 17-cv-00949-WHO<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 17 |

## INTRODUCTION

For a number of years, the USDA has regularly posted documents concerning the enforcement activities of the Animal and Plant Health Inspection Service ("APHIS") to two online databases, the Animal Care Information Search ("ACIS") database and the Enforcement Actions ("EA") database. On February 3, 2017, citing potential privacy concerns, the USDA blocked public access to both the ACIS and EA databases so that it could conduct a review of the documents posted online to ensure that they do not contain information that should be redacted or shielded from public disclosure. The USDA's review of the previously-posted APHIS documents is ongoing. It has reposted tens of thousands of documents that it has determined are appropriate for public disclosure to the APHIS website, including the most up-to-date inspection reports for larger entities.

Plaintiffs, non-profit organizations involved in promoting animal welfare, assert that by blocking access to the APHIS databases, the USDA breached its obligations under the Freedom of Information Act ("FOIA")'s reading-room provision, which requires agencies to make frequently requested documents available for public inspection. Alternatively, they assert that the USDA's decision to block access to the ACIS and EA databases was arbitrary and capricious in violation of

the Administrative Procedures Act ("APA"). They seek a mandatory preliminary injunction compelling the United States Department of Agriculture ("USDA") to restore public access to all the documents available through two databases on the website. Mot. at 3 (Dkt. No. 17).

Plaintiffs must demonstrate that the law and facts clearly favor the relief they have requested in order to obtain a mandatory injunction. They have not done so. They are not likely to succeed on their FOIA claim because there is no public remedy for violations of the reading room provision – courts may order production of documents to specific plaintiffs but cannot mandate publication to the public as a whole. They have not exhausted administrative remedies on their reading room claims either. They are also not likely to succeed on their claim under the APA because FOIA provides plaintiffs an adequate alternative remedy. And they cannot establish that they are likely to suffer irreparable harm absent an injunction or that the balance of harms weighs in their favor in light of the on-going review and privacy interests asserted by the USDA. Plaintiffs' motion for a preliminary injunction is DENIED.

**BACKGROUND**

The Animal Welfare Act ("AWA") sets minimum standards for the humane treatment of animals by various commercial enterprises, including animal research facilities, animal breeders, and animal exhibitors. 7 U.S.C. § 2132; 9 C.F.R. § 11.1. The USDA, through APHIS, enforces the AWA. 7 U.S.C. §§ 2131 *et seq.*; 9 C.F.R. §§ 1.1 *et seq.* APHIS has inspectors nationwide who conduct inspections to ensure that regulated facilities are in compliance with the AWA. Shea Decl. ¶¶ 8-10 (Dkt. No. 22-1). They document violations in inspection reports, which may lead to issuing letters of warning or other enforcement actions. *Id.* ¶¶ 10-13. APHIS may also bring administrative enforcement actions by filing administrative complaints to be heard before the Office of the Administrative Law Judge ("OALJ"), and can refer serious violations to the Department of Justice if criminal charges are appropriate. *Id.* ¶¶ 12.

Over the years, APHIS has made many of the documents related to its enforcement actions publicly available through the APHIS website. *Id.* ¶ 4. APHIS started posting inspection reports and annual reports to its website in the late 1990s or early 2000s but ceased the practice as a result of security concerns following the September 11, 2001 terrorist attacks. *Id.* ¶ 14. From 2005 –

2009, it was engaged in FOIA litigation regarding annual reports for animal research facilities. *See Humane Society of the United States ("HSUS") v. USDA*, 05:cv-00197 (D.D.C. 2005). As part of a settlement of the case, the agency agreed to post certain annual reports to the APHIS website on the ACIS database. *Id.* ¶ 15. It also resumed posting inspection reports to the database around the same time. *Id.* In 2010, APHIS began posting (1) official warning letters; (2) voluntary settlement agreements between APHIS and regulated entities; (3) administrative complaints filed against regulated entities to initiate proceedings; (4) consent decisions before the OALJ; and (5) final decisions of the OALJ to the EA database. *Id.* ¶ 16. All records posted to the ACIS and EA databases were posted proactively, before the USDA received specific FOIA requests for documents. *Id.* ¶ 17. If posted information was later responsive to a FOIA request, APHIS would generally refer requesters to the APHIS website instead of processing and releasing documents directly to the requester. *Id.*

Between 2012 and 2016, APHIS grew concerned that its Privacy Act system for reviewing and redacting AWA records was insufficient. *Id.* ¶ 20. In particular, largely due to lawsuits brought against it and other government agencies under the Privacy Act, it worried that some of the information it was publicly posting, such as the names and addresses of closely held businesses, might need to be redacted. *Id.* ¶ 22. An Eighth Circuit decision that held in favor of Privacy Act litigants in September, 2016, crystallized these concerns. *See Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963 (8th Cir. 2016). In November, 2016, APHIS decided to remove compliance and enforcement records from the APHIS website's public search tool so that these documents could be reviewed and potentially either be further redacted before being reposted or withheld. *Id.* ¶ 23.

Due to programming limitations, the only way to restrict public view of the documents on the APHIS website was to completely remove the public search tool database. *Id.* On February 3, 2017, APHIS took the ACIS public search tool database offline and removed various compliance and enforcement documents from the site. *Id.* ¶ 25. APHIS posted a public statement, which it updated on February 7, 2017, explaining that the removal of these documents was a temporary measure and that the USDA had not made final decisions as to what documents would be suitable

3

for reposting. *Id.*

Since February 3, 2017, APHIS's Animal Care employees have spent close to 4,000 employee hours reviewing and reposting records. *Id.* ¶ 26. Approximately 75 percent of all Animal Care employees, many of whom are not usually involved in processing FOIA requests, have participated in this effort. *Id.* APHIS has now scaled back the review process but a more limited group of employees will continue to dedicate significant time to reviewing these records until the review process is complete. *Id.*

APHIS has issued a number of statements to update the public on the status of the review process and to alert them as to when documents are re-posted to the website. *Id.* ¶ 27. So far APHIS has reposted approximately 10,000 inspection reports, including reports for universities, research institutions, and large businesses. *Id.* ¶ 28. It also continues to post inspection reports from recent inspections for these entities. *Id.* It is continuing to review approximately 20,000 inspection reports for smaller facilities that are more likely to implicate the privacy concerns of individuals and closely-held businesses, but has not made final decisions whether these documents will be made available through ACIS. *Id.* APHIS has also re-posted all annual reports for research facilities that were previously posted, approximately 11,500 records. *Id.* It has re-posted lists of licensees and registrants, which it temporarily removed to redact individuals' addresses. *Id.* ¶ 29. It continues to review, but has not reposted, any of the 2,700 records involving pre-adjudicatory enforcement action, including warning letters, pre-litigation settlement agreements, and administrative complaints. *Id.* ¶ 30. It has not re-posted copies of OALJ consent decisions and final orders, but these documents remain available on the OALJ website and APHIS has included a link to that site. *Id.* ¶ 31.

Plaintiffs note that, despite this progress, many documents that were previously available through the APHIS website have still not been reposted. They assert that absent access to the entire APHIS databases, their mission will be frustrated as much of their advocacy work involves using the APHIS databases. Mot. at 13-17. They also argue that they face a potential loss of member and donor goodwill if they cannot provide up-to-date information to their members. Mot. at 13-18.

Plaintiffs bring claims against the USDA under FOIA and under the APA. They assert that the USDA has failed to make records affirmatively available as required under FOIA's reading-room provision, which requires agencies to make available final opinions and frequently requested documents. *See* 5 U.S.C. § 552(a)(2). They also contend that the agency's decision to remove documents from the APHIS website violated the APA. They have moved to preliminarily enjoin the USDA and compel it to make all previously-available records accessible to the public through the APHIS website pending resolution of these claims.

**LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This has been interpreted as a four-part conjunctive test, not a four-factor balancing test. However, the Ninth Circuit has held that a plaintiff may also obtain an injunction if he has demonstrated "serious questions going to the merits" that the balance of hardships "tips sharply" in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public interest. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011).

A preliminary injunction may be either prohibitory or mandatory. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (internal quotations and alterations omitted). The "status quo" means "the last, uncontested status which preceded the pending controversy.' " *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th Cir. 1984). In contrast, a mandatory injunction "orders a responsible party to 'take action' " *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). Mandatory injunctions are disfavored and "are not granted unless extreme or very serious damage will result." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980). They "are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.*

5

# DISCUSSION

## I. MANDATORY VS. PROHIBITORY INJUNCTION

Plaintiffs' proposed injunction is mandatory because they seek to compel the USDA to do something it is not currently doing, provide public access to thousands of documents in its online reading room. Plaintiffs contend that this is not a mandatory injunction because they only seek to require the USDA to repost the documents it previously made available. They assert that the "last uncontested status" in this case is the status before documents were removed from the website. But the "last uncontested status" is not measured from the time at which the first dispute at issue in a case arose, but from the time the complaint was filed. *See N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9the Cir. 2010) (preliminary injunction prohibiting enforcement of new furlough policy was "prohibitory" because, "*at the time the suit was filed*" furlough contracts had been signed but no furlough days had been taken); *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (preliminary injunction seeking to compel USC to install plaintiff as head coach was "mandatory" because on "the date th[e] action was filed in state court, Coach Stanley was no longer a USC employee" and her contract had expired).

Plaintiffs are challenging the USDA's decision to suddenly remove documents from its APHIS databases on February 3, 2017. Plaintiffs filed this case twenty days later, on February 23, 2017. There is no dispute that at the time plaintiffs filed this action, the USDA had already removed the documents from public access. Because plaintiffs are seeking to compel the USDA to do something affirmative-- repost thousands of documents to the APHIS databases-- their preliminary injunction is mandatory and must be considered under a stricter standard. Plaintiffs must demonstrate that the "facts and law clearly favor" a preliminary injunction. *Id.*

## II. LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Plaintiffs' FOIA claim

Plaintiffs assert that they are likely to succeed on their FOIA claim to compel the USDA to provide public access to all documents previously available through the APHIS website. They argue that the USDA has violated FOIA's reading-room provision because all documents on the

6

APHIS website are frequently requested documents that the USDA is required to make publicly available under section 552(a)(2)(D). Alternatively, they contend that many of the documents previously available, such as warning letters, pre-litigation settlement agreements, and inspection reports, are "final opinions" that must be made available under section 552(a)(2)(A).

The USDA responds that plaintiffs are not likely to succeed on this claim as district courts lack jurisdiction to issue injunctions to enforce FOIA's reading-room provision beyond requiring production of any improperly withheld documents to the individual plaintiffs. They further argue that plaintiffs' claims must fail because plaintiffs did not exhaust administrative remedies before filing suit and because plaintiffs cannot demonstrate that the documents previously posted to APHIS are "frequently requested" under section 552(a)(2)(D). Finally, they assert that warning letters, pre-litigation settlement agreements, and inspection reports are not "final opinions" within the meaning of section 552(a)(2)(A). Because I conclude that FOIA does not provide a public remedy for reading-room violations and that plaintiffs did not exhaust administrative remedies, I do not address the parties' other arguments.

### 1. Whether courts can issue injunctions to enforce FOIA's reading room provision

There are very few cases addressing the precise question raised here – whether federal courts may order agencies to make records available to the public at large under FOIA. The only two cases to address this point, both from the D.C. Circuit, have concluded that FOIA relief is limited to the individual plaintiff, not the general public. *See Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior*; 88 F.3d 1191, 1203 (D.C. Cir. 1996); *CREW v. DOJ*, 846 F.3d 1235, 1243 (D.C. Cir. 2017).

Section 552(a)(4)(B) of FOIA provides that district courts may "enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). In *Kennecott*, the D.C. Circuit considered whether, given this language, the federal courts have the power to order agencies to publish documents to the Federal Register in line with FOIA's requirements under section 552(a)(1). 88 F.3d at 1202. The court concluded that it does not have this power. It read section

552(a)(4)(B)'s provision that courts could "order the production of any agency records improperly withheld from the complainant" as laying out an individual remedy, not a general one. *Id.* at 1203. The court explained that given this language, section 552(a)(4)(B) "is aimed at relieving the injury suffered by the individual complainant, not by the general public" and that "[p]roviding documents to the individual fully relieves whatever information injury may have been suffered by that particular complainant; ordering publication goes well beyond that need." *Id.* The court added that this limitation to enforcing section 552(a)(1) was not unreasonable because Congress had provided an additional means of encouraging agencies to fulfill their publishing obligations under section 552(a)(1) by protecting individuals from being "adversely affected by" any regulation that an agency was required to publish in the Federal Register but that had not been published. *See* 552(a)(1)(E).

In *CREW*, the D.C. Circuit considered whether the holding of *Kennecott* applies to FOIA's reading-room provision under section 552(a)(2) and determined that it does. 846 F.3d at 1243. The *CREW* court highlighted *Kennecott's* focus on individual relief vs. public relief and concluded that this analysis applied equally to FOIA's obligation to make certain documents "available for public inspection." *Id.* The court explained, "Given *Kennecott's* construction of section 552(a)(4)(B), we think it clear that a court has no authority under FOIA to issue an injunction mandating that an agency 'make available for public inspection' documents subject to the reading-room provision." *Id.*

Although *CREW* is directly on point and would doom plaintiffs' FOIA claim, it is not binding on this court. Plaintiffs urge that *CREW*, and *Kennecott* before it, got it wrong. They note that section 552(a)(4)(B) states that a court has the power to "enjoin [an] agency from withholding agency records *and* to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B) (emphasis added). They emphasize the conjunctive "and" and assert that this language creates two separate powers: (1) the general power to enjoin an agency from withholding records; and (2) the power to order the production of records to specific complainants. They add that the first provision should be read to confer a separate power to avoid rendering it surplusage. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal

8

principle of statutory construction that a statute ought . . . to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)). Finally, they point to language from the Supreme Court and Ninth Circuit suggesting that federal courts have broad powers to craft injunctive relief under FOIA. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974) ("there is little to suggest . . . that Congress sought to limit the inherent power of any equity court"); *Long v. U.S. Internal Revenue Serv.*, 693 F.2d 907, 909 (9th Cir. 1982) ("In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate . . . to bar future violations that are likely to occur." (internal citation omitted)).

Although this textual interpretation of 552(a)(4)(B) was briefed in *Kennecott*, the court did not address the argument in its opinion. *See CREW*, 846 F.3d at 1244. The issue was raised again in *CREW*. The *CREW* court rejected the argument, concluding that it was bound by the *Kennecott* court's decision because it considered all of the language of section 552(a)(4)(B) and implicitly rejected this construction. *CREW*, 846 F.3d at 1244 ("in arriving at its holding, the *Kennecott* court necessarily—albeit implicitly—rejected this argument, and we are bound 'not only [by] the result' of a prior opinion 'but also [by] those portions of the opinion necessary to that result.' " (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996))). As a result, no court has explicitly responded to or addressed this argument.

While plaintiffs raise a plausible statutory construction argument, I am ultimately persuaded by the D.C. Circuit's conclusions in *Kennecott* and *CREW*. To read section 552(a)(4)(B) as plaintiffs suggest would render superfluous the second provision, that courts may "order the production of any agency records improperly withheld from the complainant," and would ignore that this power is limited to ordering the production of documents "withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). If, as plaintiffs argue, the first provision, giving courts the power to "enjoin [an] agency from withholding agency records," gives courts unlimited power to craft injunctive relief, the more specific, and seemingly limited language, of the second provision would be meaningless.

Other sections of FOIA reaffirm the interpretation that courts are limited to ordering

9

agencies to produce documents to particular complainants. Section 552(a)(4)(F) provides that in certain circumstances, FOIA violations may warrant disciplinary action. It provides that "[w]henever the court orders the production of any agency records improperly withheld from the complainant and . . . issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," Special Counsel must determine whether further disciplinary action is necessary. 5 U.S.C. § (a)(4)(F)(i). If plaintiffs are correct that section (a)(4)(B) provides courts with broad authority to craft injunctive relief, this section, which only anticipates imposing disciplinary action following an order compelling the production of documents to a complainant, would be irrationally narrow. Why would such disciplinary action be appropriate if the court ordered limited production to a complainant but apparently not if it ordered broader production to the public at large? This seemingly illogical result is easily resolved if I conclude, as the *Kennecott* and *CREW* courts did, that section 552(a)(4)(B) provides only an individual remedy, not a general one.

I conclude that federal courts do not have the power to order agencies to make documents available for public inspection under section 552(a)(4)(B) of FOIA. While plaintiffs may bring suit to enforce section 552(a)(2) and may seek injunctive relief and production of documents to them personally, they cannot compel an agency to make documents available to the general public. Plaintiffs are not likely to succeed on their claim for injunctive relief under FOIA to restore public access to the APHIS databases.

### 2. Did Plaintiffs Exhaust Administrative Remedies?

The USDA argues that plaintiffs' claims also fail because they have not exhausted their administrative remedies. "Exhaustion of a party's administrative remedies is required under the FOIA before that party can seek judicial review." *In re Steele*, 799 F.2d 461, 465 (9th Cir. 1986). Courts should not entertain FOIA claims "[w]here no attempt to comply fully with agency procedures has been made." *Id.*

FOIA anticipates that individuals will request records under all three of FOIA's provisions. *See* 5 U.S.C. § 552(6)(A) ("Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall-- (i) determine within 20 days (excepting Saturdays, Sundays,

and legal public holidays) after the receipt of any such request whether to comply with such request . . ."). With regard to exhaustion of administrative remedies, it specifically states that "any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions." 5 U.S.C. § 552(6)(C)(i).

Plaintiffs assert that it is not necessary to file a FOIA request to bring a case to enforce a reading-room claim because agencies have an affirmative duty to post documents to a reading room absent a request. They cite to *CREW,* where the D.C. Circuit stated that "a plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records under *section 552(a)(3)*." 846 F.3d at 1240 (emphasis added) (citing *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972) ("the opinions and order referred to in Section 552(a)(2), *when properly requested*, are required to be made available, and . . . such requirement is judicially enforceable without *further* identification under Section 552(a)(3), even though the agency has failed to make them available as required by Section 552(a)(2)") (emphasis added)). Plaintiffs misread this language as holding that plaintiffs seeking to enforce the reading-room provision need not make any request at all. But as *CREW* and *Irons* make clear, a plaintiff seeking to enforce the reading room provision is only excused from making "*further* identification under Section 552(a)(3)" before bringing an action, and must still "properly request" the documents under section 552(a)(2). Indeed, the plaintiffs in *CREW* had sent a letter to the Office of Legal Counsel ("OLC") requesting that the office comply with section (a)(2) by posting OLC opinions to an electronic reading room and only filed suit after this request was formally denied. *CREW*, 846 F.3d at 1239-1240. Plaintiffs' argument that there is no requirement to exhaust administrative remedies when seeking to enforce section 552(a)(2) is not supported by the language of FOIA or the precedent plaintiffs cite. Plaintiffs were required to exhaust administrative remedies.

Plaintiffs assert that, even if they were required to exhaust administrative remedies, they have done so because since February 3, 2017, they have each filed FOIA requests for documents

11

that previously would have been available on the APHIS databases and have not received responses within the timeline outlined in section 552(a)(6)(C)(i). While it appears that plaintiffs have filed some FOIA requests, it does not appear that they have requested the precise relief they seek here (for APHIS to repost all previously available files to the APHIS databases). Instead, on a weekly basis they have been filing requests for all documents generated during that particular week. While these requests might overlap with their reading room claims in certain ways, they do not address the full scope of relief plaintiffs seek in this case. That plaintiffs have made FOIA requests for some documents does not mean that they have exhausted administrative remedies on the different claims they bring in this case. Under *In re Steele*, this court should "not entertain" plaintiffs' FOIA claims as they have not fully complied with FOIA's administrative procedures.

Plaintiffs have not demonstrated that they are likely to succeed on the merits of their FOIA claim as federal courts lack the power to provide the injunctive relief plaintiffs seek and because plaintiffs failed to exhaust administrative remedies.

### B. Plaintiffs' APA claim

Plaintiffs argue that even if FOIA does not provide broad injunctive relief for reading-room claims, they are likely to succeed on their alternative claim that the USDA violated the APA by removing documents from the APHIS database. The USDA responds by arguing primarily that (1) plaintiffs cannot sustain a claim under the APA because there is an adequate alternative remedy under FOIA and (2) that the USDA's decision to remove documents from the APHIS database is not a "final agency action" and so is not subject to APA review. As I conclude that FOIA provides an adequate alternative remedy, and thus precludes plaintiffs' APA claim, I do not address the USDA's additional arguments.

#### 1. Adequate alternative remedy?

The APA only provides judicial review of "final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704. For an alternative remedy to be adequate, it need not "provide relief identical to relief under the APA, so long as it offers relief of the same genre." *See Garcia v. McCarthy*, No. 13-cv-03939-WHO, 2014 WL 187386, at *13 (N.D. Cal. 2014). A particular form of relief may be clearly inferior to the relief potentially available under

12

the APA but still be "adequate" for the purposes of § 704.  For example, in the context of enforcing anti-discrimination laws, the D.C. Circuit considered whether the ability to bring situation-specific suits against particular discriminating entities was an adequate alternative remedy to more systemic relief that might be available under the APA.  *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 2009).  Acknowledging that "[s]uits directly against the discriminating entities may be arduous, and less effective in providing systemic relief, than continuing judicial oversight of federal government enforcement" the court nevertheless held that "under our precedent, situation-specific litigation affords an adequate, even if imperfect, remedy." *Id.*

In *CREW*, the D.C. Circuit court concluded that FOIA offers an adequate alternative remedy for violations of section 552(a)(2) and precludes FOIA-related suits under the APA. *CREW*, 846 F.3d at 1245.  It noted that "FOIA contains an express private right of action and provides that review in such cases shall be 'de novo.' " *Id.*  It also noted that individuals may bring claims to enforce the reading-room provision of FOIA and, though courts cannot order agencies to make documents available for public inspection, courts may order agencies to produce documents to plaintiffs directly. *Id.* at 1246.  It concluded that though there was "some mismatch between the relief sought and the relief available, FOIA offers an 'adequate remedy' within the meaning of" the APA such that an APA claim is barred. *Id.*

The D.C. Circuit's analysis in *CREW* is persuasive.  This case is largely analogous to *Cavazos*.  Although the individual-specific relief available under FOIA is likely "more arduous, and less effective in providing systemic relief" for section 552(a)(2) violations than a public remedy would be, it nevertheless "affords an adequate, even if imperfect, remedy." *Cavazos*, 906 F.2d at 751.  Production of documents to plaintiffs will satisfy their informational injury.  Because FOIA provides an adequate alternative remedy, plaintiffs cannot sustain their alternative claim under the APA.

Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their FOIA or APA claims.  This alone is fatal to their motion for injunctive relief.  As addressed briefly below, they have also failed to demonstrate that they are likely to suffer irreparable harm or

that the balance of harms weighs in their favor.

## III. IRREPARABLE HARM

Plaintiffs argue that they will suffer irreparable harm if the USDA does not grant public access to the APHIS databases. They allege several types of irreparable harm: (1) economic harms because they have been forced to divert resources to spend more time writing FOIA requests for documents that were previously available; (2) frustration of mission because slow access or no access to the APHIS documents prevents them from engaging in their advocacy activities; and (3) loss of member and donor goodwill. Plaintiffs have failed to demonstrate that they are likely to suffer irreparable harm under any of these theories.

### A. Economic Injuries

Plaintiffs allege that they are likely to suffer irreparable economic injuries because they have been forced to divert limited resources to preparing FOIA requests. Mot. at 14. Plaintiff Animal Legal Defense Fund ("ALDF") notes that it plans to submit approximately one request per week for records that were previously available and that this will require approximately one hour of staff time per week. *Id.* Plaintiff Stop Animal Exploitation Now! ("SAEN") notes that it recently hired an additional "document procurement specialist" and that this position was "made necessary in significant part" by APHIS's removal of the database from public view. Budkie Decl. ¶ 11.

Plaintiffs acknowledge that economic injuries are not generally "irreparable," but note that economic injuries can be irreparable when damages are not available because the wrongdoer is protected by sovereign immunity. *See Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015). The USDA counters that economic injuries are only "irreparable" if they are "considerable." *See California Pharmacists Assn. v. Maxwell-Jolly*, 596 F.3d 1098, 1114 (9th Cir. 2010). It asserts that plaintiffs' allegations that they have been forced to divert approximately one hour of employee time per week to deal with FOIA requests and that SAEN has hired a new staffer are not sufficient to meet the "considerable" standard. *See Ariz. Hosp. & Healthcare Ass'n v. Betlach*, 865 F. Supp. 2d 984, 998-1000 (concluding that a loss representing less than one percent of plaintiffs' annual revenues was not "considerable"). Plaintiffs insist that their economic

14

losses are considerable and emphasize that SAEN is a small organization and hiring any new staff person is a "considerable" expense.

Plaintiffs' vague allegations of economic injury resulting from the need to file FOIA requests are insufficient to demonstrate that they are likely to suffer irreparable injury. Plaintiffs do not provide any declaration or other evidence demonstrating SAEN's size, explain the economic harm that has resulted from hiring the new staff person, or make clear when this staff person was hired. They admit that this position was only partially made necessary by the removal of APHIS documents from the website. *See* Budkie Decl. ¶ 11. Further, as the USDA pointed out at oral argument, the hiring of this new staff person may allow SAEN's other staff, who previously spent considerable time searching for and reviewing documents on the APHIS database, to spend their time on other goals and tasks that may be beneficial to the organization's purpose. This showing of economic injury is not sufficient to justify a mandatory preliminary injunction.

### B. Frustration of Mission and Document Delays

Plaintiffs assert that they are likely to suffer irreparable harm because untimely production of the APHIS documents, or no production of these documents, makes it impossible for them to engage in their advocacy work. They emphasize that much of their work requires them to review and act on information contained in APHIS documents soon after the documents have been prepared. This includes filing complaints with law enforcement, which are only effective if they are timely made, working with the media to put pressure on bad actors, and working with local governments to support animal welfare legislation. Mot. at 13-17. Plaintiffs have made a strong showing that these advocacy efforts are hindered if they are not able to access the most up-to-date APHIS documents.

But these concerns now appear to be largely resolved because the USDA has resumed posting new inspection reports for larger entities. *See* Shea Decl. ¶ 28. If plaintiffs have access to these new documents they can effectively lodge complaints with law enforcement, work with the media to publicize non-compliant entities, present up-to-date information to legislators, and work to ensure the health and safety of animals on an ongoing basis. Because plaintiffs' advocacy

15

focuses primarily on resolving current and future animal welfare violations, they will be able to continue pursuing these goals through access to the many new inspection reports available. As plaintiffs now have access to many of the documents they have indicated are most crucial, and many of the remaining unposted documents are old and outdated reports, they have not demonstrated that they are likely to suffer irreparable harm through frustration of mission absent immediate access to all APHIS documents.

### C. Loss of Member and Donor Goodwill

Plaintiffs assert that they are likely to suffer irreparable harm by losing member and donor goodwill. They explain that they "risk harming their relationship and goodwill with their members, supporters, and donors by being unable to provide up-to-date information regarding animal cruelty." Mot. at 17. But, given that USDA is now posting many up-to-date inspection reports on the APHIS website, this potential injury does not appear particularly likely to occur, let alone likely to cause irreparable harm. Plaintiffs will still be able to provide their donors and members with up-to-date information for many entities and remain a resource for them. The inability to access all APHIS documents, many of which are outdated and not particularly relevant to plaintiffs' allegations of injury, is not likely to impact plaintiffs' relationships with their donors and members.

Plaintiffs have not demonstrated that they are likely to suffer irreparable harm or that the harm they might suffer will be sufficiently severe to justify a mandatory injunction.

## IV. BALANCE OF HARMS

The balance of harms tips against an injunction. Although plaintiffs highlight the public interest in access to up-to-date information and documents on AWA enforcement, the USDA has already started posting many new inspection reports. The public interest in accessing older AWA documents is substantially diminished – for the purpose of promoting animal health and welfare, access to current and future documents is clearly the most important. In addition, the removal of documents from the APHIS website is, at the moment, only temporary; the USDA has not made final determinations as to whether any documents will be permanently removed from public access and is actively reviewing documents and reposting them for public inspection once they

16

have been cleared.  The public may also access these documents by filing FOIA requests under section 552(a)(3).

In turn, the USDA, and regulated individuals and entities, have an interest in ensuring that the USDA is not posting documents that unnecessarily reveal private individual information. Plaintiffs assert that this interest is negligible as the USDA has posted these documents for many years without incident.  But, as the USDA has explained, they are currently engaged in Privacy Act litigation regarding the information contained in publicly posted APHIS documents.  The USDA has a clear interest in ensuring that they are not in violation of the Privacy Act, and regulated individuals have an interest in ensuring that their private information is not publicly disclosed.

The public's interest in immediately accessing all AWA enforcement and compliance records is outweighed by the USDA's interest in ensuring that these records do not improperly disclose private information.  The balance of harms weighs against an injunction.

## CONCLUSION

Because plaintiffs seek a disfavored mandatory preliminary injunction, they must demonstrate that the facts and the law clearly weigh in favor of the relief they seek.  They have failed to meet this burden.  Plaintiffs have not demonstrated that they are likely to succeed on the merits of their FOIA or APA claims, that they are likely to suffer irreparable harm, or that the balance of interests weighs in their favor.  A preliminary injunction is not appropriate and plaintiffs' motion is DENIED.

**IT IS SO ORDERED.**

Dated: May 31, 2017

William H. Orrick
United States District Judge